**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**F.S., a minor,**

                                        **Plaintiff,**

        **vs.**                                                 **1:10-CV-444**
                                                                **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                                        **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

OFFICE OF STEPHEN J. MASTAITIS            Stephen J. Mastaitis, Esq.
1412 State Route 9P
Saratoga Springs, New York 12866
_Attorney for Plaintiff_

Social Security Administration            Tomasina DiGrigoli, Esq.
Office of Regional Counsel                Karen Fiszer, Esq.
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
_Attorney for Defendant_

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

        Plaintiff F.S, a minor child, brings the above-captioned action pursuant to 42 U.S.C. §

405(g), seeking a review of the Commissioner of Social Security's decision to deny his

application for supplemental social security ("SSI").

## II.    PROCEDURAL BACKGROUND

In September 2007, plaintiff's mother, Jamie Czuwala, filed an application for SSI benefits on F.S.'s behalf.  (Administrative Transcript at p.94).[1]  Plaintiff was 9 years old at the time of the application and allegedly suffered from Attention Deficit Hyperactivity Disorder ("ADHD").[2]  On February 21, 2008, F.S.'s application was denied and plaintiff requested a hearing by an ALJ which was held on July 21, 2009.  (T. 61, 30).  On September 18, 2009, the ALJ issued a decision denying F.S.'s claim for benefits.  (T. 13-29).  The Appeals Council denied plaintiff's request for review on February 23, 2010, making the ALJ's decision the final determination of the Commissioner. (T. 1-3).  This action followed.

## III.    FACTUAL BACKGROUND

### Medical Evidence

### William A. Grattan, M.D.

The record contains office notes from William A. Grattan, M.D., plaintiff's pediatrician. In January 2005, during plaintiff's six year well child visit, the doctor noted that plaintiff was not receiving any services at school, "shared with peers" and "does well in school - tries spelling, not good".  Dr. Grattan suspected that plaintiff had a learning disability. (T. 209).  In July 2005, at plaintiff's seven year well child visit, the doctor noted that plaintiff repeated the first grade but "does well in school, shares with peers, cooperates and reads". (T. 296).  Under "Plan", the doctor noted, "safety issues". (T. 296).

In September 2005, Dr. Grattan examined plaintiff for "suspected ADHD".  Dr. Grattan diagnosed plaintiff with ADHD, oppositional defiance disorder and anxiety and prescribed

---

[1]  "(T. )" refers to pages of the administrative transcript, Dkt. No. 9.

[2]  ADHD is an abbreviation for Attention Deficit Disorder with Hyperactivity.  http://www.medilexicon.com (last visited April 2, 2010).

Concerta.  In January 2006, Dr. Grattan examined plaintiff for an "ADHD Follow Up". (T. 292). Plaintiff's mother stated that plaintiff refused to take his medication in December and that the teacher did not notice.  The doctor noted that plaintiff sleeps "whenever and wherever" and that three older boys in the home were "in and out of jail".  The doctor opined, "there is a lack of structure in the home" and diagnosed plaintiff with oppositional behavior due to poor parenting and "no positive role models". (T. 292).   Dr. Grattan recommended parenting classes and gave plaintiff's mother the telephone number for "Big Brothers". (T. 292).

In April 2006, at plaintiff's eight year well child visit (second grade), plaintiff's mother indicated that F.S. was a "handful in school when not on his medication" and that he didn't focus. Plaintiff's mother indicated that he "stopped Concerta for the summer".

On March 7, 2007, Dr. Grattan prepared a Child Protective Services Report Form indicating that he was concerned with "ineffective parenting".  On September 2, 2008, at plaintiff's ten year old well child visit, Dr. Grattan noted that plaintiff was in fourth grade and did well in school, engaged in extra curricular activities, had friends, understood rules and was responsible for his health, school and chores. (T. 278).

On March 19, 2009, plaintiff appeared for a "sick visit".  Plaintiff's mother noted that he was "hyper and fighting", "impulsive" and misbehaving at school.  (T. 274).  The doctor noted, "restart Concerta". (T. 274).  In July 2009, at plaintiff's eleven year old well-child visit, the doctor noted "did well in school. . . plans to attend State Police Summer Camp".

On July 17, 2009, Dr. Grattan prepared an IFA For A Child From Age 3 to Attainment Age of 16. (T. 269).  Dr. Grattan opined that plaintiff suffered from extreme limitations in social development and functioning; marked limitations in personal/behavioral development and function; and extreme limitations in concentration, persistence and pace.  (T. 270).  Dr. Grattan

further concluded, "Patient requires long term medication and medical supervision in order to maintain function and to ameliorate limitations listed above." (T. 270).

**John Thibodeau, Ph.D**

On January 15, 2008, Dr. Thibodeau performed a psychiatric and intelligence evaluation at the request of the agency. (T. 211). On examination, plaintiff's speech and language skills were below age expectations and, "[r]eceptively and expressively [plaintiff] appeared to be in the borderline mentally retarded range". (T. 212). Plaintiff's thought processes were normal, his appearance was normal and he was alert and oriented. Plaintiff's insight and judgment were fair but less than appropriate for his age and his cognitive functioning was in the borderline to mildly mentally retarded range. (T. 213). Dr. Thibodeau diagnosed plaintiff with ADD but noted that his hyperactive impulse was controlled with medication. Dr. Thibodeau also suspected borderline to mild mental retardation. (T. 214). Dr. Thibodeau opined that plaintiff, "would have difficulty following and understanding age appropriate directions. He would complete age appropriate tasks with some difficulty because of his suspected low intelligence". Plaintiff was noted as "only mildly impaired" in social behavior, age appropriate for learning and aware of danger. Plaintiff could interact with adults and peers. (T. 214).

With regard to intelligence testing, the WISC-IV yielded a verbal comprehension score of 69 and a full scale IQ of 72. (T. 218). Dr. Thibodeau opined that the scores, "are indicative of a solidly borderline mentally retarded range and should be considered significantly mentally handicapped". (T. 218).

**Dawn Megyeri, M.S.**

On January 15, 2008, Dawn Megyeri performed a speech and language evaluation at the request of the agency. Ms. Megyeri noted that plaintiff was enrolled in a special education

program where he received speech therapy two to three times per week. (T. 207).  Upon examination, Ms. Megyeri noted plaintiff was attentive but frustrated.  An informal observation of oral motor structure was normal and the parameters of pitch, quality, intensity and rate were appropriate. (T. 208).  Plaintiff's speech was intelligible throughout the conversation. (T. 209).  A Clinical Evaluation of Language Fundamentals ("CELF") was performed and revealed that plaintiff was receptive to language skills and developing within normal limits with a moderate expressive language delay. (T. 209).  Ms. Megyeri did not consider this delay significant and opined that it would not impact on his future educational success.  Ms. Megyeri also found that plaintiff was able to communicate in an effective manner using appropriate vocal quality, fluency and articulation.  Ms. Megyeri concluded that plaintiff was able to follow and understand directions and to make his needs and wants know. (T. 210).

### Childhood Disability Evaluation Form

On February 20, 2008, J. Meyer, M.D., a state agency review physician, prepared a Childhood Disability Evaluation.[3] (T. 227).  Dr. Meyer, a pediatric specialist, indicated that F.S.'s impairments (ADHD, asthma, speech and language impairments and learning disability) were severe but did not meet, medically equal or functionally equal a listed impairment. (T. 227). Dr. Meyer found that F.S. exhibited less than marked limitations in the domains of acquiring and using information and attending and completing tasks.  Dr. Meyer also found that F.S. had no limitation interacting and relating to others, moving and manipulating objects, caring for himself or in his health and physical well being. (T. 227-230).

---

[3] The form allows an individual to indicate whether a claimant's condition meets, medically equals, or functionally equals a presumptively disabling condition identified in the listing of impairments set forth in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  The form also allows the individual to rate the degree of limitation in several areas of development or functioning in order to determine whether a condition functionally equals a listed impairment. *Id.*

**Teacher Evaluations**

On May 29, 2007, plaintiff was evaluated by Jennifer Riedel, a Speech-Language Pathologist for the Watervliet Elementary School. (T. 162).  Ms. Riedel opined that plaintiff's expressive and receptive language scores fell below the average for his age and that he had the most difficulty with working memory tasks.  Ms. Riedel recommended speech and language services twice per week in a group setting and on individual session per week. (T. 162).

On November 1, 2007, plaintiff's Special Education Teacher, Christi Green, completed a Teacher Questionnaire.  At that time, she had known plaintiff for five months and opined that plaintiff had "very serious problems" in five out of ten areas in the domain of acquiring and using information.  Ms. Green also opined that plaintiff had a "serious problem" in three of the four areas of the domain.  (T. 144).  Ms. Green noted that plaintiff had no limitations interacting or relating with others, moving and manipulating, caring for himself or in his health and well being.  As for attending and completing tasks, Ms. Green opined that F.S. had "slight problems" in 7 of the 13 factors, a "serious problem" carrying out multi-step instructions and "very serious problems" in two (working without distractions and focusing on a task to finish) of the 13 factors.  These problems were present on a daily basis. (T. 145).

On March 19, 2009, plaintiff's teachers, Christine Goodell (fourth grade) and Jennifer Meehan (special education teacher), completed a Vanderbilt Assessment form and evaluated plaintiff's behavior over a period of seven months.  At that time, plaintiff was not taking medication.  (T. 277).  The teachers noted that "very often", plaintiff failed to pay attention, was easily distracted and had difficulty focusing.  They commented that "often" plaintiff had difficulty organizing and staying still and that he would often interrupt and defy rules.

In June 2009, Ms. Goodel and Ms. Meehan completed a Teachers Questionnaire. At that time, they had known plaintiff for a year. In the area of acquiring and using information, they opined that he had an "obvious to serious problem". The teachers also noted that plaintiff had a "slight to serious" problem in the area of attending and completing tasks on a daily basis. (T. 193). However, they also indicated that when plaintiff took his medication, he was able to focus and his productivity changed dramatically. The teachers opined that plaintiff had a "slight problem" interacting with others when he was not on medication and no problems moving or manipulating. With respect to caring for himself, they opined that he had a "slight problem" as he was "impulsive" and very impatient. (T. 196).

## IV.    DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

> Regulations enacted by the Social Security Administration set forth a three-step analysis for evaluating whether a child's impairment meets this definition of disability: First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. § 416.924©. Finally, if the ALJ finds a severe impairment, he or she

7

must then consider whether the impairment "medically equals" or, as
is most pertinent here, "functionally equals" a disability listed in the
regulatory "Listing of Impairments." Id. § 416.924(c)–(d).

*Miller v. Comm'r of Soc. Sec*., 409 F. App'x 384, 386 (2d Cir. 2010).

Equivalence to a Listing can be either medical or functional.  20 C.F.R. § 416.924(d);

*Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp.2d 479, 488 (E.D.N.Y. 2003).  If an impairment is

found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the

twelve month durational requirement is satisfied, the child will be deemed disabled.  20 C.F.R. §

416.924(d)(1); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

Under the Social Security Regulations (the "Regulations"), analysis of functionality is

performed by consideration of how a claimant functions in six areas which are denominated as

"domains," and described as "broad areas of functioning intended to capture all of what a child

can or cannot do."  20 C.F.R. § 416.926a(b)(1). Those prescribed domains include:

> (i) [a]cquiring and using information;
> (ii) [a]ttending and completing tasks;
> (iii) [i]nteracting and relating with others;
> (iv) [m]oving about and manipulating objects;
> (v) [c]aring for [oneself]; and
> (vi) [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1).  A finding of disability is warranted if a "marked" limitation, defined

as when the impairment "interferes seriously with [the claimant's] ability to independently

initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the

listed domains.  20 C.F.R. § 416.926a(a).  Functional equivalence also exists in the event of a

finding of an "extreme" limitation, meaning "more than marked," representing an impairment

which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or

complete activities," and this rating is only "give[n] to the worst limitations".  20 C.F.R. §

416.926a(e)(3)(i); *see also Pollard*, 377 F.3d at 190.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Using the three-step disability evaluation, the ALJ found at step one that F.S. has not engaged in any substantial gainful activity since September 10, 2007. (T. 16). At step two, the ALJ concluded that F.S. had severe impairments consisting of ADHD, oppositional defiant disorder, a learning disorder, speech and language delay and borderline intellectual functioning. (T. 16). At the third step of the analysis, the ALJ found that none of F.S.'s severe impairments meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations. (T. 17). The ALJ evaluated F.S.'s functional abilities in the six domains established by 20 C.F.R. § 416.926a(b)(1) and found that F.S.'s limitations were "less than marked" with regard to acquiring and using information and attending and completing tasks. (T. 21-23) . The ALJ found that F.S. had no limitation with regard to interacting and relating with others, in his ability to move about and manipulate objects, in caring

for himself or in his health and physical well-being.  (T. 23-28).  Consequently, the ALJ

concluded that F.S. was not disabled.  (T. 28).

 In seeking federal judicial review of the Commissioner's decision, plaintiff argues that:

(1) the ALJ erred when he failed to assign controlling weight to the opinion of plaintiff's treating

physician, Dr. William Grattan; (2) the ALJ erred when he failed to find that F.S.'s impairments

meet or equal a listed impairment; (3) the ALJ erred by failing to find that F.S.'s impairments are

functionally equivalent to the Listings.; and (4) the ALJ improperly evaluated plaintiff's mother's

credibility.  (Dkt. No. 11).[4]

## A. Opinion Evidence

 The Second Circuit has defined a treating physician as one "who has provided the

individual with medical treatment or evaluation and who has or had an ongoing treatment and

physician-patient relationship with the individual."  *Coty v. Sullivan*, 793 F.Supp. 83, 85-86

(S.D.N.Y. 1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir. 1988)).   Under the

Regulations, a treating physician's opinion is entitled to "controlling weight" when it is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also*

*Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

 When an ALJ refuses to assign a treating physician's opinion controlling weight, he must

consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent
> of the treatment relationship; (ii) the evidence in support of the
> treating physician's opinion; (iii) the consistency of the opinion with
> the record as a whole; (iv) whether the opinion is from a specialist;

---

[4] On February 7, 2012, the parties appeared for oral argument in support of their positions.  At that time, plaintiff's counsel specified which listed impairments and which functional domains were at issue.

and (v) other factors brought to the Social Security Administration's
attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).  The Regulations also specify that the Commissioner "will always

give good reasons in [her] notice of determination or decision for the weight [she] give[s]

[claimant's] treating source's opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)

(citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaal v. Apfel*, 134 F.3d 501, 503-504 (2d Cir.

1998).  Failure to provide "good reasons" for not crediting the opinion of a claimant's treating

physician is a ground for remand.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

An ALJ may rely upon the opinions of both examining and non-examining State agency

medical consultants, since such consultants are deemed to be qualified experts in the field of

Social Security disability."  *Williams v. Astrue*, 2011 WL 831426, at *11 (N.D.N.Y. 2011) (citing

20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913( c), and

416.927(f)(2)).  Generally, a non-examining source's opinion, including the opinions of state

agency medical consultants and medical experts, will be given less weight than an examining

source's opinion. 20 C.F.R. § 416.927(d)(1).  However, "[i]f the Commissioner shows that a

treating source's opinion is not well-supported or not consistent with the record, the regulations

'permit the opinions of nonexamining sources to override treating sources' opinions provided they

are supported by evidence in the record.'" *Williams*, 2011 WL 831426, at *11 (the ALJ is

permitted to use the state agency medical review opinion to override the plaintiff's treating

physician so long as the reviewer's opinion was supported by evidence in the record) (citing *Diaz

v. Shalala*, 59 F.3d 307 (2d Cir. 1995)).  If an ALJ relies upon a non-examining reviewer's

opinion, that opinion must be supported by the bulk of the record.  *See* Social Security Ruling

("SSR") 96–6p, 1996 WL374180, *2 (July 1996)*; see also Rocchio v.Astrue*, 2010 WL 5563842,

at *14 (S.D.N.Y. 2010).

The ALJ has a duty to develop the record regardless of whether the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Shaw*, 221 F.3d at 131 ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."). "The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, 2008 WL 4287389, at *13 (N.D.N.Y. 2008); *see also Rosa v. Apfel*, 1998 WL 437172 at *4 (S.D.N.Y. 1998) ("A simple follow-up request from the ALJ could have resulted in an assessment of the claimant's residual functional capacity from his treating physician.") The failure to contact a physician constitutes a breach of the ALJ's duty to develop the record and provides a basis for remand. *Lawton v. Astrue*, 2009 WL 2867905, at *16 (N.D.N.Y. 2009). In *Shaw v. Chater*, the Second Circuit held:

> For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record.

*Shaw*, 221 F.3d at 134.

Here, the ALJ assigned, "great weight to the State agency medical opinion" finding that the opinion was, "supported by the objective medical evidence in the record, including progress notes received at the hearing level from the claimant's pediatrician, Dr. Grattan as well as a report from the claimant's 4th grade teachers, Christine Goodell and 4th grade special education teacher, Jennifer Meehan". (T. 20). The ALJ also accorded "some weight" to Dr. Thibodeau's opinion and Ms. Megyeri's conclusions finding that their opinions, "are not inconsistent with the State agency medical opinion". (T. 20). The ALJ assigned "little weight" to Dr. Grattan's July 2009 because:

it is not supported by the objective medical evidence and appears to be
based primarily on Ms. Czuwala's subjective reports of the claimant's
functioning for purposes of her child's claims for benefits.  It is noted
that Dr. Grattan's report is not entitled to controlling weight as a
treating physician's opinion because it is not well-supported by the
objective clinical or laboratory findings, including his own scant
findings on repeat examinations of the claimant performed between
January 2006 and July 2009.  Moreover, the pediatrician's opinion is
entitled to less weight than the opinion of the non-examining State
agency medical consultant because the State agency medical opinion
is more consistent with the record as a whole, including teachers'
reports and the claimant's activities of daily living.  (T. 20).

Upon review of the record, the Court finds that the ALJ's assignment of "little weight" to

the treating physician's opinion is not supported by substantial evidence.  The ALJ should not

reject a treating physician's opinion as being unsupported, without first attempting to develop the

record.  *See Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the

ALJ's duty to seek additional information from [the physician] sua sponte.").   The ALJ further

erred when he failed to afford controlling weight to Dr. Grattan's assessment because it "appears

to be based" on plaintiff's mother's subjective complaints.   "[R]eliance on a plaintiff's subjective

complaints is not a valid basis for rejecting the treating physician's opinion."  *Fulmer v. Astrue*,

2010 WL 3239077, at *4 (N.D.N.Y. 2010) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 107

(2d Cir. 2003) ("a patient's report of complaints, or history, is an essential diagnostic tool")).

Finally, Dr. Grattan was plaintiff's treating pediatrician for nearly five years. The doctor

diagnosed plaintiff with ADHD, an impairment that the ALJ found to be "severe", and prescribed

medication for plaintiff's condition.  If the ALJ found inconsistencies between Dr. Grattan's

opinions and his treatment notes, the ALJ should have contacted Dr. Grattan and given him the

opportunity to address the perceived inconsistencies.  *See Steele ex rel. M.D. v. Astrue*, 2011 WL

3841534, at *6 (N.D.N.Y. 2011).  Based upon the record herein, the ALJ committed reversible

error when he failed to recontact Dr. Grattan. *See Fox v. Astrue*, 2008 WL 828078, at *10 (N.D.N.Y. 2008).

Plaintiff also claims that the ALJ inappropriately assigned "great weight" to the State agency reviewing examiner's assessment. Dr. Meyer's opinions and Dr. Grattan's assessment are dramatically different. While an ALJ is permitted to rely upon the non-examining reviewers opinion when that opinion is supported by the bulk of the record, contradictions between the treating physician's opinion and the consultative findings obligate the ALJ to develop the record further. *See Rocchio,* 2010 WL 5563842, at *14. Further, as will be discussed *infra*, the remaining record, including reports from plaintiff's teachers and the consultative physicians, do not support Dr. Meyer's assessment. Because the ALJ failed to develop the record with regard to plaintiff's treating physician, the Court cannot determine whether the decision to afford Dr. Meyer's opinion was supported by substantial evidence.

In addition, the record is replete with references regarding plaintiff's noncompliance with his medication. As the Commissioner noted during oral arguments, the cornerstone of the ALJ's decision to deny benefits was the fact that plaintiff's condition/impairments seemingly improved when he took Concerta. In the 2009 evaluation, Dr. Grattan noted that "patient requires long term medication and medical supervision in order to maintain function and ameliorate limitations listed above". (T. 270). The Court cannot determine whether the limitations expressed by Dr. Grattan in that report existed with or without medication. In addition, Ms. Goodell's evaluation discusses plaintiff's behavior when he is "on medication". However, it is unclear whether Ms. Goodell completed her assessment when plaintiff was complaint and taking his medication. As the majority of the record is unclear with regard to what symptoms/impairments persisted and to what degree when plaintiff was compliant with his medication, the ALJ was compelled to contact

14

plaintiff's treating physician to obtain information regarding this issue. *See Titus ex rel. N.M.C. v. Astrue*, 2010 WL 3323738, at *8 (N.D.N.Y. 2010) (the physician's opinion regarding the impact of medication on the domains was ambiguous and should have been addressed on remand by contacting the physician for clarification).

In support of the ALJ's assessments, the Commissioner argues that the ALJ was not required to recontact Dr. Grattan because the record was complete.  Defendant further claims that the ALJ had enough information, including doctor's notes and information from other sources, to render a decision.   Defendant misinterprets the ALJ's duty to develop the record.   Dr. Grattan's July 2009 opinion was not a formal assessment of plaintiff's impairments and plaintiff's functional capacity in terms of the six domains.  However, it was error for the ALJ to assign "little weight" to Dr. Grattan's opinion without attempting to obtain a more definitive assessment. *Martinez ex rel. Ramirez v. Astrue*, 2008 WL 4833016, at *7 (S.D.N.Y. 2008) *(*citing *Santos v. Barnhart*, 2005 WL 119359, at *8 (E.D.N.Y. 2005) (finding that "the ALJ fell short of discharging her duty to develop the record" because "the record shows no attempt to contact [the treating physician] for an assessment of [the claimant's] impairments and their impact on the relevant six domains ")).  The ALJ improperly relied upon Dr. Grattan's medical data and Dr. Meyer's Childhood Disability Evaluation Form to render his assessment of F.S.'s functional limitations.  *Oliveras ex rel. Gonzalez v. Astrue*, 2008 WL 2262618, at *7 (S.D.N.Y. 2008).

Based upon the aforementioned, the ALJ committed reversible error.  While the ALJ is not compelled to assign controlling weight to Dr. Grattan's opinions, in light of Dr. Grattan's notes and plaintiff's age and impairments, Dr. Grattan's opinions should have been, at the very least, considered. *Stytzer v. Astrue*, 2010 WL 3907771, at *7 (N.D.N.Y. 2010) (citation omitted).

Upon remand, the ALJ is instructed to develop the record accordingly and apply the regulations. To wit, the ALJ must contact Dr. Grattan to obtain a functional assessment. If the ALJ decides not to grant Dr. Grattan's opinions controlling weight, he must adequately explain the reasons pursuant to the Regulations. The ALJ should also re-evaluate the remaining opinion evidence in light of any new evidence.

**B.    Listed Impairments**

Plaintiff claims that he meets the following listed impairments: 112.02, 112.04, 112.05, 112.08 and 112.11. By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1; *Lusher ex rel. Justice v. Comm'r of Soc. Sec.*, 2008 WL 2242652, at *6 (N.D.N.Y. 2008). For both adults and children, "if an applicant satisfied the Listings, the applicant was presumed to be disabled, and did not have to prove 'whether he [or she] actually can perform his [or her] own prior work or other work.'" *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529-530 (1990)).

The Commissioner's determination as to whether the claimant's impairment meets or equals the Listings must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairment. 20 C.F.R. §§ 416.925, 416.926a; *see also Giles v. Chater*, 1996 WL 116188, at *5-6 (W.D.N.Y. 1996). Where the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings. *Booker v. Heckler*, 1984 WL 622, at *3 (S.D.N.Y. 1984). When evaluating a claimant's impairments, the ALJ must refer to the specific criteria set forth in the Listing. *Morales v.*

16

*Barnhart*, 218 F.Supp.2d 450, 459-60 (S.D.N.Y. 2002). Mere recitation of the medical evidence

is insufficient unless the reports referred to contain substantiated conclusions concerning the

Listings, and the ALJ expressly adopts the reasoning of those conclusions. *Id*. The ALJ (not the

Commissioner's lawyers) must "build an accurate and logical bridge from the evidence to [his]

conclusion to enable a meaningful review". *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)

(internal citations omitted). A court "cannot . . . conduct a review that is both limited and

meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the

weight accorded the evidence considered." *Morgan on Behalf of Morgan v. Chater*, 913

F.Supp.184, 188 -189 (W.D.N.Y. 1996) (quoting *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir.

1985)).

     An ALJ has a legal duty to consider "all evidence" in the case record before making a

determination as to whether a claimant is eligible for disability benefits. 20 C.F.R. §

416.920(a)(3); *see Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004) ("It is not

proper for the ALJ to simply pick and choose from the transcript only such evidence as supports

his determination, without affording consideration to evidence supporting the plaintiff's claims. It

is grounds for remand for the ALJ to ignore parts of the record that are probative of the plaintiff's

disability claim."); *see also Lopez v. Sec'y of Dep't of Health & Human Servs*., 728 F.2d 148,

150-51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to

consider relevant and probative evidence which is available to him.").

     In this case, the ALJ specifically discussed Listings 112.02, 112.11, 112.08 and 112.05

and found that plaintiff did not meet or equal any of the aforementioned listings. The ALJ relied

upon Dr. Meyer's opinion noting, "the State agency medical consultant determined that the

claimant does not have an impairment that meets or medically equals one of the listed impairments of Appendix 1".  (T. 17).

### 1.    Listing § 112.02

Listing § 112.02 (Organic Mental Disorders) provides:

> Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

> A. Medically documented persistence of at least one of the following:

> 1. Developmental arrest, delay or regression; or
> 2. Disorientation to time and place; or
> 3. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 4. Perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking); or
> 5. Disturbance in personality (e.g., apathy, hostility); or
> 6. Disturbance in mood (e.g., mania, depression); or
> 7. Emotional ability (e.g., sudden crying); or
> 8. Impairment of impulse control (e.g., disinhibited social behavior, explosive temper outbursts); or
> 9. Impairment of cognitive function, as measured by clinically timely standardized psychological testing; or
> 10. Disturbance of concentration, attention, or judgment;

> And

> B. Select the appropriate age group to evaluate the severity of the impairment:

> 2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

18

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 CFR Pt. 404, Subpt. P, App. 1.

In this case, the ALJ concluded, "[t]he medical record fails to support the presence of an organic factor that is etiologically related to the claimant's loss of specific cognitive abilities or deficits related to his learning disorder". (T. 17). Plaintiff claims that Dr. Grattan's records, the reports from plaintiff's teachers and Dr. Thibodeau's records support a finding that plaintiff meets this listing. The Court disagrees. The record is devoid of any objective, diagnostic or laboratory testing confirming the presences of any organic factor. *See RJM ex rel. Moore v. Astrue*, 2008 WL 833194, at *2, n. 3 (S.D.Ind. 2008) (Listing 112.02 (organic mental disorder) was not met as the plaintiff cited to no evidence of any diagnoses of personality disorder). Accordingly, the Court does not find error in regard to this listing.

**2.     Listing § 112.11**

19

To meet or equal Listing § 112.11 (ADHD), a claimant's condition must satisfy two criteria set forth in Paragraphs A and B.  The relevant portions of Listing § 112.11 provide as follows:

> 112.11 Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of all three of the following:
>
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;
>
> And
>
> B. For children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11 (2006); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2) (2006).  Standing alone, a diagnosis of ADHD does not establish a disability under the Act.  *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999) (citation omitted).

Here, the ALJ concluded, ". . . the claimant has been treated for symptoms related to ADHD and oppositional defiant disorder, but his condition responded well to the use of Concerta medication."  (T. 17).  There is no dispute that plaintiff suffers from ADHD.  The ALJ did not discuss the remaining factors in the Listing, to wit, whether plaintiff suffered from marked inattention, impulsiveness and hyperactivity and whether plaintiff suffered from the criteria in 112.02B.  The record contains some evidence supporting plaintiff's position.  Notably, reports from claimant's teachers mention plaintiff's impulsiveness, difficulties with attention and his limited learning ability.  Dr. Grattan diagnosed plaintiff with anxiety and his office notes indicate

that plaintiff was, "a handful in school", "hyper" and "impulsive".   The ALJ should have addressed the record in this regard.  In addition, the ALJ's decision with respect to this listing is based upon Dr. Meyer's assessment and plaintiff's improvement with medication.  Based upon the analysis in Part IA above, the Court is constrained to find that the ALJ's determination is supported by substantial evidence.  Upon remand, the ALJ is instructed to properly consider and evaluate the entire record and apply the correct legal standards with regard to Listing § 112.11.

### 3.     Listing § 112.08

"The required level of severity for Listing § 112.08, Personality Disorders, is met when there is '[d]eeply ingrained, maladaptive patterns of behavior, associated' with seclusiveness or autistic thinking, pathologically inappropriate suspiciousness or hostility, oddities of thought, perception, speech, and behavior, persistent disturbances of mood or affect, pathological dependence, passivity, or aggressiveness, or intense and unstable interpersonal relationships with impulsive and exploitative behavior resulting in a finding of at least two marked impairments in age-appropriate functions of cognitive/communicative, social functioning, personal functioning, or concentration, persistence, or pace." *Brown ex rel. S.W. v. Astrue*, 2008 WL 3200246, at *12 (N.D.N.Y. 2008) (citing 20 C.F.R. Pt. 404, Subpt. P App. 1, Listing 112.08).

In this case, the record contains no diagnosis related to any personality disorder.  Plaintiff does not cite to any portion of the record that supports that assertion.  Accordingly, substantial evidence does not establish that plaintiff suffered from any impairment that would meet this Listing.

### 4.     Listing § 112.05D, 112.05E or 112.05F[5]

---

[5] During oral argument, plaintiff's counsel referred to Listing 112.05C, however, plaintiff did not have a, "valid verbal, performance, or full scale IQ of 59 or less".

Plaintiff alleges that he meets this listing because his verbal comprehension testing is 69 and further, because he suffers from ADHD, hyperactivity and impulse issues.  Listing § 112.05 involves mental retardation which is, "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05.  To meet or equal Listing 112.05, for children of claimant's age, claimant's condition:

> A. . . . for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02;
>
> Or
>
> B. Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;
>
> Or
>
> C. A valid verbal, performance, or full scale IQ of 59 or less;
>
> Or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
>
> Or
>
> E. A valid verbal, performance, or full scale IQ of 60 through 70 and:
>
> 2. For children (age 3 to attainment of age 18), resulting in at least one of paragraphs B2b or B2c or B2d of 112.02;
>
> Or
>
> F. Select the appropriate age group:
>
> 2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.

20 CFR Pt. 404, Subpt. P, App. 1.

To meet the requirements of 112.05D, a claimant must establish a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1. To satisfy the second prong, the claimant must demonstrate that an impairment or combination of impairments, separate and distinct from a low IQ, imposes more than a slight or minimal limitation on the claimant's functioning.  *Williams v. Astrue*, 2008 WL 4755348, at *10 (S.D.N.Y. 2008).  To meet the requirements of § 112.05E, a claimant must first have "[a] valid verbal, performance, or full-scale IQ of 60 through 70."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05E.  Additionally, a claimant must satisfy the requirements listed in one of the following: § 112.02B(2)(b); § 112.02B(2)( c ); or § 112.02B(2)(d).[6]  *See Williams*, 2008 WL 4755348, at *12-13.  Listing 112.05F requires a showing of "marked impairment in age-appropriate cognitive/communicative function" combined with that of a "physical or other mental impairment imposing an additional and significant limitation of function.  *Cruz ex rel. Vega v. Barnhart,* 2005 WL 2010152, at *10 (S.D.N.Y. 2005).  Listing 112.05F is satisfied for children ages three to eighteen when the child has: (1) a marked impairment in age-appropriate cognitive/communicative function, documented by medical findings and, if necessary, the results of appropriate standardized tests and (2) a physical or other mental impairment imposing an additional and significant limitation of function. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.05F.

In this case, the ALJ did not differentiate between the various subsections of 112.05.  The ALJ simply found, "[a]lthough the record shows that the claimant obtained a verbal comprehension score of 69 on the WISC-IV, a diagnosis of mental retardation has not been

---

[6] These sections are cited *supra*.

confirmed by his treating or examining sources." (T. 17).   Despite the ALJ's conclusion at Step

Two, that plaintiff suffered from ADHD, ODD, a learning disorder, speech and language delay

and borderline intellectual functioning, the ALJ did not address the impact, if any, that these

"severe impairments" had on the determination that plaintiff did not meet any subsection of

112.05, specifically 112.05D or 112.05F.  *See Cruz*, 2005 WL 2010152, at *12 (the ALJ's

determination that the plaintiff had four severe impairments, a determination supported by the

available evidence, is tantamount to a finding that each of these impairments satisfies the second

prong of Listing 112.05F).   The ALJ also failed to address whether plaintiff suffered from

marked limitations in any of the areas of functioning outlined in 112.02B(2)(b) or ( c ) or (d) to

satisfy listing 112.05E.  Finally, the ALJ failed to address whether plaintiff suffered from a

marked impairment in age-appropriate cognitive/communicative function, documented by

medical findings sufficient to meet listing 112.05F.  It appears that the ALJ concluded that

plaintiff did not meet 112.05 because plaintiff's treating physicians did not diagnose plaintiff with

mental retardation.  While relevant, a diagnosis is not dispositive of whether plaintiff meets this

listing.   Consequently, substantial evidence does not support the ALJ's conclusions in this area.

Upon remand, the ALJ should consider the evidence and determine whether plaintiff meets any of

the aforementioned subsections of 112.05.

### 5.   Listing § 112.04

To meet or equal Listing 112.04, affective disorders, a claimant's condition must satisfy

two criteria set forth in Paragraphs A and B. *See Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643,

648 (8th Cir. 2004).  The applicable portion of Paragraph A requires "medically documented

persistence, either continuous or intermittent" of a major depressive syndrome that is

characterized by at least five of the following, which must include either depressed or irritable

mood or markedly diminished interest or pleasure:

> a.  Depressed or irritable mood; or
> b. Markedly diminished interest or pleasure in almost all activities; or
> c.  Appetite or weight increase or decrease, or failure to make expected weight gains; or disturbance with change in weight; or
> d. Sleep disturbance; or
> e. Psychomotor agitation or retardation; or
> f. Fatigue or loss of energy; or
> g. Feelings of guilt or worthlessness; or
> h. Difficulty concentrating or thinking; or
> i. Suicidal thoughts or acts; or
> j. Hallucinations, delusions, or paranoid thinking.

20 C.F.R. Pt. 404, Subpt. P, App. 1§ 112.04; *see also Garrett*, 366 F.3d at 648.   To satisfy

Paragraph B, the child must demonstrate marked impairments in two of the following: age-

appropriate cognitive/communicative functioning; age-appropriate social functioning; age-

appropriate personal functioning; or marked difficulties in maintaining concentration, persistence

or pace.  20 C.F.R. Part 404, Subpt. P, App. 1 § 112.02(B)(2).

Here, the ALJ did not specifically address this listing.  However, the ALJ's failure to

discuss a listing is not reversible error if substantial evidence in the record indicates that plaintiff

did not satisfy the listing. *Brown*, 2008 WL 3200246, at *12 (citing *Dunahoo v. Apfel*, 241 F.3d

1033, 1037 (8th Cir. 2001)).   In this case, the evidence does not demonstrate that plaintiff met this

listing.  Plaintiff was never diagnosed with depression by any treating or consultative examiner.

Accordingly, substantial evidence supports this conclusion.

**B.      Functional Domains**

Plaintiff claims that he suffers from an extreme/marked limitation in the following

domains: acquiring and using information; attending and completing tasks; and interacting and

relating with others.  As discussed *supra*, the ALJ must analyze whether claimant has an

impairment or combination of impairments that functionally equals a Listing based upon an analysis of six domains: (1) attending and completing tasks; (2) acquiring and using information; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Plaintiff argues that the ALJ improperly relied upon the reports from examining and non-examining specialists.

### 1.    Attending and Completing Tasks

The domain of attending and completing tasks gauges how well a child is able to focus and maintain attention. 20 C.F.R. § 416.926a(h). For children of F.S.'s age (age 6 to age 12), the regulations provide:

> School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

Some examples of limited functioning include: (1) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (2) "being slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; and (4) being easily frustrated and giving up on tasks. *See* 20 C.F.R. § 416.926a(h)(3)(i)-(v); *see also Morgan*, 2005 WL 925594, at *13. The Regulations define an extreme limitation as:

an "extreme" limitation . . .interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

(iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(i); § 416.926a(e)(3)(iii).

By contrast, a marked limitation is:

(i) . . . an impairment(s) [that] interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

(iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(i); § 416.926a(e)(2)(iii).

Here, the ALJ found that plaintiff had a "less than marked" limitation in this domain. The ALJ relied upon Dr. Thibodeau's conclusions, Ms. Megyeri's report and the teacher observations

that plaintiff was more focused with medication. (T. 23).  The ALJ also reiterated that he afforded "little weight" to Dr. Grattan's conclusion that plaintiff suffered from "extreme" limitations in concentration and pace.  Upon review, the Court finds that substantial evidence does not support the ALJ's assessment.  The fact that plaintiff "improved with medication" does not preclude a finding of marked limitations in any domain.  *See Gorman v. Astrue*, 2009 Wl 4884469, at *7 (N.D.N.Y. 2009) ( "[it seems logical that an individual could improve from a worse state to a marked level of difficulty").  The ALJ ignored plaintiff's teacher's observations regarding plaintiff's "daily/serious problems" carrying out multi-step instructions and completing work accurately and "daily/serious problems" focusing, completing assignments and working at a reasonable pace.  The ALJ also failed to recognize the teachers comments that plaintiff worked best in "small group settings" and "structured environments".   In addition, as discussed in Part IA, the ALJ failed to develop the record with regard to Dr. Grattan's opinion in the functional domains.  Upon remand and receipt of additional evidence, the ALJ is directed to consider the entire record and assess plaintiff's limitations in regard to this domain.

### 2.    Acquiring and Using Information

In assessing this domain, the ALJ must consider how well a child acquires or learns information, and how well he can use the information he has learned. *Edmond v. Barnhart*, 2006 WL 2769922, at *9 (W.D.N.Y. 2006).  For children F.S.'s age, the Regulations provide:

> School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change).  You should be able to use

> increasingly complex language (vocabulary and grammar) to share
> information and ideas with individuals or groups, by asking questions
> and expressing your own ideas, and by understanding and responding
> to the opinions of others.

20 C.F.R. 416.926a(g)(2)(iv).

An analysis of this domain should include school records including non-medical evidence provided by a teacher, who works with a child on a daily basis and observes him in a social setting with peers as well as adults. *Edmond,* 2006 WL 2769922 at *10 (holding that the ALJ erred by not considering the report of the claimant's teacher in making a determination on the domain of acquiring and using information) (citing *Matthews o/b/o Dixon v. Barnhart*, 339 F.Supp.2d 1286, 1290, n.8 (N.D. Ala. 2004)); *see also Jones ex rel. SA v. Astrue*, 2009 WL 1924763, at *6 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1513(d)(2)(e)).

Here, the ALJ found that plaintiff had a "less than marked" limitation in this domain. (T. 21). The ALJ relied upon Ms. Megyeri's opinion that plaintiff had no more than a moderate expressive language delay. The ALJ did not discuss the CELF-4 test administered by Ms. Megyeri. Of importance is the interpretation that plaintiff produced test scores "- 2 SD" in recalling sentences, formulating sentences, word classes/expressive and word classes/total. (T. 208). "A 'marked' limitation also means . . . [a] valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and his day-to-day functioning in domain-related activities is consistent with that score". *See* 20 C.F.R. 416.926a(e)(2). The ALJ also failed to acknowledge the CELF-4 test administered in May 2007 by Jennifer Riedel, the Watervliet Elementary Speech Pathologist. Notably, that testing revealed an expressive and receptive language score below the average range for his age. Plaintiff scored a 51 and 67 and the average range was 85-115. (T. 162). "Given the vital importance of language abilities to the

domain of acquiring and using information, the CELF-4 is properly considered a 'comprehensive standardized test designed to measure ability or functioning' in the domain." *See F.M. v. Astrue*, 2009 WL 2242134, *8 (E.D.N.Y. July 27, 2009) (quoting 20 C.F.R. § 416.926a(e)(2)(iii)).

In evaluating this domain, the ALJ discussed the opinions by plaintiff's fourth grade teachers but ignored their assessment that plaintiff, "often cannot follow written directions without modeling or simplifying the task. [F.S.] . . . struggles with new concepts and completing multi-step problems". (T. 192). The teachers also found that plaintiff has a "very serious problem" in reading and comprehending written material, providing oral explanations, expressing ideas in written form and recalling previously learned material. Plaintiff's teachers also noted plaintiff had a "serious problem" comprehending oral instructions, understanding vocabulary, doing math problems, learning new material and applying problem-solving skills. (T. 192). The ALJ also failed to recognize Dr. Thibodeau's opinion that plaintiff had difficulties and understanding age appropriate instructions. (T. 214).

Upon remand and receipt of new evidence, the ALJ is directed to consider all of the relevant evidence in assessing this domain.

### 3.    Interacting and Relating to Others

Plaintiff contends that the ALJ erred by failing to find that F.S. has an extreme or marked impairment in the domain of interacting and relating to others. The domain of interacting and relating with others considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For school-age children of F.S.'s age (age 6 to attainment of age 12), the Regulations further provide:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

Here the ALJ found that plaintiff has no limitation in this area. (T. 24).  The ALJ relied upon Dr. Thibodeau's examination and plaintiff's participation in group activities including organized sports, regular gym class, classes at First Holy Communion and plaintiff's testimony that he plays with friends.  The ALJ noted that plaintiff, "has never been in trouble with the law and there is no record of serious disciplinary problems at school".  (T. 24).  The ALJ also noted that plaintiff's behavior improved with medication.

Upon review of the record, as it presently exists, the Court is unable to conclude that substantial evidence supports the ALJ's assessment in this regard.  The ALJ found, at Step Two of the sequential analysis, that plaintiff suffered from oppositional defiant disorder, which was deemed a severe impairment.  This conclusion is in direct contradiction with the determination that plaintiff has no problems interacting with others.  *See Hudson ex rel. S.G. v. Astrue*, 2009 WL 1212114, at *9 (N.D.N.Y. 2009) (claimant clearly had problems interacting with others as he was diagnosed as having oppositional defiant disorder, a condition noted for causing difficultly with regard to interpersonal interaction).   While there is evidence in the record that plaintiff was able to interact with others, there is conflicting evidence relating to plaintiff's social behavior. Also, "the domain of interacting and relating with others concerns more than fights and disruptive behavior."  *McClain v. Barnhart*, 299 F.Supp.2d 309, 326 (S.D.N.Y. 2004) (citing 20 C.F.R. § 416.926a(i)(2)(iv) (the domain includes the ability to "talk to people of all ages, to share ideas,

31

tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand")).  While the record may not support a finding of marked limitations in this area, due to the diagnosis of oppositional defiance disorder and the ALJ's failure to adequately develop the record, the Court finds that substantial evidence does not support the ALJ's decision in this domain.

## C.    Credibility

Plaintiff argues that the ALJ did not adequately explain the reasons for discounting plaintiff's mother's testimony.  Plaintiff claims that her testimony is supported by the medical records from plaintiff's treating physician and the reports from plaintiff's teachers.

SSR 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." ... The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996).

As a fact finder, the ALJ is free to accept or reject testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988).  A finding that a witness is not credible must be set forth with sufficient specificity to permit intelligible review of the record.  *Id.* (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 648 (2d Cir. 1983).  If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent. *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003).  In such a case, the ALJ

must make specific findings concerning the credibility of the parent's testimony, just as he would

if the child were testifying. *Id*. (citation omitted) (holding that the finding that the mother's

testimony was, "credible only to the extent that [it was] supported by evidence of record" is

"standard boilerplate language" and an insufficient explanation of credibility).

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding

disabling pain and to arrive at an independent judgment, in light of medical findings and other

evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or

functional limitations associated with his impairments is not fully supported by clinical evidence,

the ALJ must consider additional factors in order to assess that testimony, including: 1) daily

activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and

aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective

findings are consistent with an inability to perform all substantial activity, but whether plaintiff's

statements about the intensity, persistence, or functionally limiting effects of his symptoms are

consistent with the objective medical and other evidence.  *See* SSR 96–7p, 1996 WL 374186, at

*2 (SSA 1996). One strong indication of credibility of an individual's statements is their

consistency, both internally and with other information in the case record.  *Id*. at *5.

After considering plaintiff's subjective testimony, the objective medical evidence, and any

other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.

*Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity

33

to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and activities during the relevant period. *Howe–Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y.2007).

Where a significant portion of the record supports the testimony, the ALJ must explain why he has determined that the testimony is not credible. *Smith v. Barnhart*, 157 F. App'x 57, 62 (10th Cir. 2005); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (ALJ's conclusion that the mother's testimony was, "unconvincing, not substantiated by objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations" was insufficient as significant probative evidence supported testimony).

In this case, the ALJ determined that:

> Ms. Czuwala's statements regarding the claimant's functioning appear to be overstated, as the objective medical evidence from the treating and examining sources do not support marked limitations in any domain. It was noted that Ms. Czuwala's poor parenting skills and household functioning have required the involvement of Child Protective Services and are considered part of the claimant's problems with behavior and conduct. (T. 19).

In the decision, the ALJ summarized Ms. Czuwala's testimony in three detailed paragraphs and found that her testimony was "not credible". Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ failed to correctly applied the standard, enumerated in 20 C.F. R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's mother's credibility. While defendant outlines the objective medical evidence that supports the ALJ's assessment of

Ms. Czuwala's credibility, the ALJ did not follow the Regulations and cite to those portions of the record.  Subsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision on credibility are not a proper substitute for the ALJ engaging in the same evaluation.  *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (the Commissioner's explanation of the ALJ's rationale is not a substitute for the ALJ providing good reasons in his decision for the weight given to treating physician's opinions); *see also Snell*, 177 F.3d at 134 (refusing to accept Commissioner's post hoc explanation for weight given to treating physician).  "Credibility determinations are to be made by the ALJ in the first instance and rationales offered by the Commissioner post-hoc in an attempt to plug the holes in the ALJ's decision are not permissible".  *Bennett v. Astrue*, 2010 WL 3909530, at *10 (N.D.N.Y. 2010).  Accordingly, on remand, the ALJ should provide a more detailed explanation regarding what portions of plaintiff's mother's testimony he found to lack credibility and the explanation for his findings pursuant to the Regulations.

## IV.  CONCLUSION

Based upon the aforementioned, the matter is remanded.  The ALJ shall contact plaintiff's treating physician to obtain an evaluation of plaintiff's functional limitations.  Upon receipt of the evaluation, the ALJ shall apply the Regulations in assessing weight to all opinion evidence.  The ALJ shall then consider Listings 112.05 and 112.11 and further analyze plaintiff's limitations in the following domains: attending and completing tasks; acquiring and using information; and interacting and relating to others.  The ALJ shall also apply the Regulations and assess plaintiff's mother's credibility.  If the ALJ requests an evaluation from plaintiff's treating physician, but does not receive a response or additional information from plaintiff's treating physician, on remand, the ALJ's decision should provide details of the efforts to obtain the evaluation.

**IT IS HEREBY,**

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  February 15, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge